**In re Wilhelm FORSTER, dba Forster Excavating and Landscaping, Debtor.**

**Bankruptcy No. 92–32365.**

United States Bankruptcy Court, N.D. Ohio, W.D.

Dec. 3, 1993.

Thomas Schank, Toledo, OH, for debtor.

Daniel Gerschutz, Prosecuting Atty., Ottawa, OH, for Putnam County.

Edward Snyder, Holland, OH, for Union Bank.

Amy Leizman and Andrew Vara, Office of the U.S. Trustee, Cleveland, OH.

Sarah Lynn and Susan Ashbrook, Asst. Attys. Gen., Columbus, OH, for State of Ohio.

Peter Donohue, Dayton, OH, for Bowsher–Morner.

## OPINION AND ORDER GRANTING MOTION TO DISMISS CASE

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court on the United States Trustee's ("UST") motion to convert or dismiss Wilhelm Forster's (the "DIP") chapter 11 case. The state of Ohio ("State"), Putnam County General Health District ("County") and the Union Bank Company ("Bank") joined in this motion. The DIP and Bowser–Morner Associates, Inc. ("Bowser–Morner") opposed the UST's motion. The Court finds that the UST's motion is well taken and that the DIP's chapter 11 case should be dismissed.

### PROCEDURAL BACKGROUND

In a prior adversary proceeding within this bankruptcy case, the Court remanded two actions brought against the DIP by the State and County for alleged environmental violations to the Putnam County Court of Common Pleas (the "State Court"). *See In re Forster,* 146 B.R. 383 (Bankr.N.D.Ohio 1992). The State has also brought a fraudulent transfer action within the state court proceeding for alleged environmental violations.

### FACTS

On April 7, 1993, the DIP and the State entered into a stipulated order (the "Order") in this Court "to resolve the claims concerning fraudulent conveyance" brought by the State in State Court for alleged fraudulent conveyances by the DIP to his wife, Inge Forster. According to the terms of the Order, Mrs. Forster agreed to "make no disposition of" any of the equipment, vehicles, real estate and bank accounts which were the subject of the fraudulent conveyance action in the State Court (the "Subject Property") "without prior notice to all parties in the bankruptcy proceeding herein and order of this Court approving of any such disposition".

On September 9, 1993, counsel for the DIP advised the Court in a cryptic letter ("the Letter") that in June of 1993 Mrs. Forster had, indeed, sold a compactor which represented part of the Subject Property. The

Letter congratulated Mrs. Forster on "accept[ing] an attractive offer" for the compactor and obtaining a "very good price" of $65,000. According to the Letter, Mrs. Forster saw an "opportunity" and "took advantage" of this opportunity. The Letter further opined that "[u]nused machinery depreciates with some rapidity, particularly when exposed to the weather and elements".

The compactor was sold in June of 1993 in violation of the Order, as previously noted. The DIP received the proceeds from this sale. Among the payments made by the DIP were payments to his attorney and himself. Only several months later in September of 1993, after substantially all of the funds from such sale had been expended, did the DIP's attorney bring this "misunderstanding" to the Court's attention.

The DIP attached "[a]n accounting of the entire proceeds of the sale" which described expenditures purportedly made by the DIP in broad terms including:

| | | |
|---|---|---|
| 7/6/93 | Forster Excavating | $20,000.00 |
| 7/22/93 | Hunter & Schank Co., LPA | $26,077.25 |
| 7/22/93 | Forster Excavating | $ 4,000.00 |
| 8/4/93 | Bureau of Workers Compensation | $ 1,426.57 |
| 8/6/93 | Blue Cross & Blue Shield | $ 667.99 |
| 8/6/93 | Huntington Bank (purportedly for insurance) | $ 500.00 |
| 8/11/93 | Forster Excavating | $ 2,000.00 |
| 8/13/93 | Forster Excavating | $ 1,753.04 |
| 8/16/93 | St. Ritas Medical Center | $ 604.77 |
| 8/19/93 | Forster Excavating | $ 2,000.00 |

At the hearing on this matter, The UST moved that the Court take judicial notice of its file. The DIP did not object to this motion. Although the Court declines the UST's invitation to wade through the voluminous contents of the entire case file, judicial notice of the Letter and the DIP's attached schedule is proper for the purpose of deciding the UST's motion. The Court takes judicial notice of the assertions contained in the Letter and the attached schedule, not the truth of such assertions, because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned". Fed.R.Evid. 201(b)(2); see Job v. Calder (In re Calder), 907 F.2d 953, 955, note 2 (10th Cir.1990) (judicial notice of contents of statement of affairs and bankruptcy schedules proper). The parties were provided adequate notice that the Letter and the attached schedule

were in issue. See This Court's Order for Hearing dated October 4, 1993 (referring to the DIP's letter advising the Court of the distribution and the objections thereto). The parties were also provided with an opportunity to confront and rebut the assertions contained in the Letter and the attached schedule at the hearing on November 5th. Additionally, judicial notice of the DIP's petition and bankruptcy schedules is warranted. Fed.R.Evid. 201(b)(2); In re Calder, 907 F.2d at 955.

The DIP testified that he transferred the Subject Property to Mrs. Forster for "all her years of work" on May 14, 1989. Although the DIP purportedly transferred the Subject Property to his wife, he still uses a substantial portion of this property in his business. The DIP also testified that he has the authority to sell the Subject Property. The DIP further stated that he makes all business decisions regarding the Subject Property. The DIP's bankruptcy schedules make no reference to the Subject Property.

The DIP testified that he presently owns a $70,000 scraper which he listed as an asset on certain schedules filed with the Bank prior to this bankruptcy case. However, the DIP acknowledged at the hearing that he failed to list this asset on his bankruptcy schedules. The DIP stated that he did not intentionally hide this asset from the Court or his creditors.

## DISCUSSION

The Court has grave reservations as to the motivation and sincerity of the DIP in seeking chapter 11 relief in light of the DIP's flagrant violation of the Order to which he had previously agreed. The Court cannot concur with statements by the DIP's counsel at the hearing that the DIP has been "forthright". The compactor was sold contrary to this Court's order in June of 1993. Subsequently, the DIP paid himself and his attorney from the proceeds of such sale. Only several months later in September of 1993, after substantially all of the funds from such sale had been expended, did the DIP's attorney bring this "misunderstanding" to the Court's attention.

Moreover, the Court feels that the inaccuracies in the DIP's bankruptcy schedules were an attempt to mislead the Court and his creditors as to the DIP's true financial condition. Consequently, the Court is compelled to dismiss the DIP's chapter 11 case.

## BURDEN OF PROOF

■ The UST bears the burden of proof on his motion by the preponderance of the evidence. *In re A–K Enterprises, Inc.,* 111 B.R. 149 (Bankr.N.D.Ohio 1990).

## DISMISSAL FOR BAD FAITH UNDER 11 U.S.C. § 1112(b)

"It is well-settled that even though Chapter 11 does not expressly so state, bad faith may serve as a ground for dismissal of a petition." *Michigan Nat'l Bank v. Charfoos (In re Charfoos),* 979 F.2d 390, 392 (6th Cir.1992) (citations omitted). " '[N]o list is exhaustive of all the conceivable factors that could be relevant in analyzing a particular debtor's good faith' ". *Charfoos,* 979 F.2d at 393 (quoting *In re Caldwell,* 851 F.2d 852, 860 (6th Cir.1988)). The *Charfoos* court held that omissions on financial statements and bankruptcy pleadings, pre-petition violations of state court orders and an extravagent lifestyle warranted dismissal for bad faith under § 1112(b). *Charfoos,* 979 F.2d at 390.

### Violation of This Court's Order (The Letter)

■ Contrary to the DIP's assertions, this Court does not view the sale of the compactor for $65,000 and the DIP's disbursement of funds from this sale to himself and the DIP's attorney as a "technical" violation of this Court's order. Compliance with the operating requirements of chapter 11 and this Court's orders are not ministerial matters. *See Ford Motor Credit Co. v. Weaver,* 680 F.2d 451, 461 (6th Cir.1982) ("a debtor in possession has the duty to protect and conserve the property in his possession for the benefit of creditors") (citations omitted); *c.f. In re Berryhill,* 127 B.R. 427, 432 (Bankr. N.D.Ind.1991) ("[n]either the court nor creditors should have to coerce or implore a debtor into fulfilling the obligations imposed upon it") (citation omitted).

More specifically, "intentional violation of an order of [a bankruptcy] court constitutes cause under 1112(b)". *In re Nugelt, Inc.,* 142 B.R. 661, 667 (Bankr.D.Del.1992); *see In re Wells,* 71 B.R. 554, 557 (Bankr.N.D.Ohio 1987) ("[t]ransferring property of the estate in a manner not consistent with the Bankruptcy Code or an order of the court may subject the case to dismissal") (citation omitted); *In re Vallejo,* 77 B.R. 365 (D.P.R.1987) (transfer of property in violation of court order subjects case to dismissal); *In re 3868–70 White Plains Rd., Inc.,* 28 B.R. 515 (Bankr.S.D.N.Y.1983) (unauthorized payments to pre-petition general unsecured creditors and payments to attorney without prior court approval represented cause for dismissal). Indeed, "[i]t is therefore the duty of the court to exact compliance with its own orders and the governing procedural rules and to impose the penalty of dismissal for failure to comply in significant respects". *In re Kleeman,* 54 B.R. 62, 65 (Bankr. W.D.Mo.1985). Here, as in *Charfoos,* the Court is not persuaded by the DIP's argument that his violation of the Order can be "explained or excused as de minimus". *Charfoos,* 979 F.2d at 394.

■ The DIP's argument that the proceeds from the sale of the compactor were spent in accordance with the priorities under the bankruptcy code, even if taken at face value, does not mitigate the DIP's actions. *See In re Nugelt, Inc.,* 142 B.R. at 668 ("[i]f a debtor chooses to seek the protection of the bankruptcy court, it must play by the rules"). Creditors were entitled to notice and a hearing prior to the sale of the compactor, a sale which cannot be characterized as a sale in the ordinary course of business, and the disbursement of the proceeds. *C.f.* 11 U.S.C. § 363(b)(1) (creditors entitled to notice and a hearing for sales of estate property not in the ordinary course of business); Fed. R.Bankr.P. 6004 (requiring notice of proposed sale not in the ordinary course of business; *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) ("[a]n elementary and fundamental requirement of due process ... is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and

afford them an opportunity to present their objections") (citations omitted). As the Eleventh Circuit has stated in the context of § 727(a)(4)(A) "[c]reditors are entitled to judge for themselves what will benefit, and what will prejudice, them". *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 618 (11th Cir.1984). Statements contained in the Letter that payments to the DIP and the DIP's attorney from the proceeds of the sale of the compactor were in the best interests of the estate are, taken in their most favorable light, self-serving.

■ Moreover, the DIP has not persuaded the Court that the proceeds received by the DIP were used to satisfy expenses in accordance with the priorities under the bankruptcy code. To the contrary, the DIP's own schedule appended to the Letter indicates that the DIP used the $65,000 proceeds from the sale of the compactor to pay himself, among other items.

■ It was the responsibility of the DIP's attorney to advise the DIP of the importance of his duties under chapter 11 and in complying with the Order. There was no evidence presented to the Court that the DIP's attorney failed to so advise his client.

Nevertheless, even if there had been evidence before the Court that the DIP's attorney had failed to advise his client of the probable result of his conduct, such failure would not excuse the DIP's conduct. *See Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. ——, ——, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74, 90 (1993) (attorney's actions chargeable to client in "excusable neglect" analysis under Fed. R.Bankr.P. 9006); *Coleman v. Thompson,* —— U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (alleged procedural default of attorney for defendant convicted of capital murder in state court proceeding chargeable to client on federal habeas corpus review where attorney's actions did not rise to the level of ineffective assistance of counsel).

### Concealment of Assets

■ The Letter raised serious questions as to whether the DIP was, as the State suggested, attempting to "have it both ways" in arguing that the Subject Property was owned by Mrs. Forster and excluding same from his bankruptcy schedules, while preserving dominion and control of these assets for himself.

In his testimony, the DIP removed any doubts which the Court had as to whether he had concealed assets from this Court and his creditors at the time that he filed his chapter 11 petition. The Court concludes that the DIP did, in fact, conceal assets from this Court and his creditors when he filed his petition under chapter 11.

■ Among the factors which a court must examine in determining whether a debtor's bankruptcy case should be dismissed for lack of good faith is whether the debtor has concealed assets from his creditors. *See Charfoos,* 979 F.2d at 390 (misstatements of fact in financial statements filed with bank supported dismissal under 11 U.S.C. § 1112(b)); *c.f. In re Zick,* 931 F.2d 1124, 1129 (6th Cir.1991) (noting that dismissal for lack of good faith under 11 U.S.C. § 707(a) is warranted in cases "that entail concealed or misrepresented assets and/or sources of income"); *National City Bank, Marion v. McNamara (In re McNamara),* 89 B.R. 648 (Bankr.N.D.Ohio 1988) (denial of a discharge warranted under 11 U.S.C. § 727(a)(4) where debtor failed to schedule interest in real estate and overstated creditors claims).

The DIP inexplicably failed to list any interest in a substantial amount of the Subject Property on his bankruptcy schedules. As previously noted, The DIP testified that prior to filing the instant petition, he transferred substantial assets to his wife for "all her years of work". A substantial portion of these assets are used in the DIP's business. The DIP stated that, although he allegedly transferred this property to his wife, he still has the full use of such property. The DIP further testified that he makes all business decisions concerning such property. In addition, the DIP has the authority to sell the property. Despite the DIP's assertions to the contrary, and in view of the DIP's testimony, the Court can only conclude that the DIP did, in fact, own a substantial interest in such assets at the time that he filed his petition under chapter 11. *See* 11 U.S.C.

§ 541 (defining property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case" with several minor exceptions). The DIP's failure to make any reference to these assets in his bankruptcy schedules cannot be attributed to inadvertence.

■ Furthermore, the DIP testified that he failed to list a $70,000 scraper which he owned on the petition date as an asset on his bankruptcy schedules. In failing to schedule this asset, the DIP exhibited the degree of gross recklessness from which this Court will infer an intent to deceive. The DIP attempted to justify his failure to list this item as unintentional. The Court rejects, as did the court in *In re Brown*, testimony that the DIP is presently "fully repentant, cognizant of and anxious to fulfill all of his obligations under the Code". *In re Brown*, 109 B.R. 555, 556 (Bankr.D.R.I.1990).

### Failure to Seek Court Approval for Payments to DIP's Attorney

■ Also evidencing the DIP's lack of good faith is his payment of attorney fees without obtaining prior court approval. *See In re 3868-70 White Plains Rd., Inc.*, 28 B.R. at 519 (unauthorized payment to attorney was an indicia of bad faith); *c.f. In re Wells*, 71 B.R. at 557-58 (debtors employment of real estate broker without court approval supported finding of bad faith). Again, the DIP has failed to carry out his fiduciary duties. *See,* 11 U.S.C. § 330; 11 U.S.C. § 331.

### Best Interest of Creditors and the Estate

■ The Court further concludes that dismissal is in the best interest of creditors and the estate.

"[O]nce cause is ascertained, section 1112(b) requires a court to ... [decide] ... to dismiss or convert [based] on 'the best interest of creditors and the estate' ". *In re Great American Pyramid Joint Venture*, 144 B.R. 780 (Bankr.W.D.Tenn.1992).

In balancing the interests of creditors and the estate, the Court finds that dismissal is warranted. "Significant failures and refusals to prosecute cases in accordance with the orders of the court and general rules of procedure can only be answered with dismissals." *In re Kleeman*, 54 B.R. at 65; *see In re Berryhill*, 127 B.R. at 433 (dismissal for willful failure to comply with court orders); *c.f. In re Brown*, 109 B.R. at 556, note 3 (converting case under § 1112(b) despite United States Trustee's recommendation that plan be confirmed and noting that "[i]t is not a fair exchange that the debtor agrees to pay creditors what he finally acknowledges he owes them, for the Trustee to overlook all of the [debtor's] prior legal and ethical transgressions").

Lastly, the arguments of Bowser–Morner, a general unsecured creditor, have not persuaded the Court that allowing the DIP to continue under title 11 is in the best interest of creditors and the estate.

### *CONCLUSION*

In conclusion, the DIP's violation of the Order, concealment of assets and failure to seek Court approval for payments to the DIP's attorney evince the degree of bad faith that represents cause for dismissal under 11 U.S.C. § 1112(b). The Court further concludes that dismissal is in the best interest of creditors and the estate.

In light of the foregoing, it is therefore

ORDERED that the United States Trustee's motion to dismiss be, and hereby is, granted. It is further

ORDERED that Wilhelm Forster's chapter 11 case be, and hereby is, dismissed.